IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOURDES ROMAN-MALAVE, | : | No. 3:10cv373 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| COMMONWEALTH OF PA, | : | |
| DEPARTMENT OF CORRECTIONS | : | |
| SCI FRACKVILLE, PA and | : | |
| PENNSYLVANIA STATE | : | |
| CORRECTIONAL OFFICER | : | |
| ASSOCIATION, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

# MEMORANDUM

Before the court for disposition are motions for summary judgment filed by both defendants, Commonwealth of Pennsylvania Department of Corrections, SCI-Frackville, PA (hereinafter "DOC" or "prison") and Pennsylvania State Correctional Officer Association (hereinafter "PSCA" or "union") in this employment discrimination case instituted by Plaintiff Lourdes Roman-Malave. The parties have fully briefed the motions, and they are thus ripe for disposition.

**Background**

Defendant DOC employed plaintiff, an Hispanic woman, beginning on September 25, 2006 as a correctional officer at the State Correctional Institution in Frackville, Pa. ("SCI-Frackville"). (Doc. 32, Union Statement of Facts ("USOF") ¶ 1; Doc. 39, Plaintiff's Ans. to USOF ¶ 1). Plaintiff worked until June 30, 2008 at which time she took a medical leave of

absence. (USOF and Pl's Ans ¶ ¶ 4-5).   After plaintiff had been on leave for more than one year, the prison informed her that if she did not return to work on July 21, 2009, her absence would be construed as a resignation. (Id. ¶ 6).[1]  Plaintiff did not return to work on July 21, 2009, and the DOC construed her absence as a resignation.   (Id. ¶ 16).

Plaintiff alleges that during her tenure at SCI-Frackville, she was subjected to a hostile work environment due to her gender and race/ancestry.  She filed the instant lawsuit alleging discrimination on the part of her employer and on the part of her union for not aiding her.  Her complaint alleges both state law and federal law claims of discrimination. At the close of discovery, the defendants each filed motions for summary judgment, bringing the case to its present posture.   We will address them separately below.

**Jurisdiction**

As this case is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[2] for unlawful employment discrimination, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] Plaintiff asserts that she could not return to work on that date due to physician's orders.  (Pl. Ans. to USOF ¶ 6).

[2] 42 U.S.C. § 2000e *et seq*.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56©)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**I.  DOC motion for summary judgment**

Plaintiff's complaint asserts the following causes of action against the

DOC: Count I, national origin, ancestry and sex discrimination under Title VII; Count II, national origin, ancestry and sex discrimination under the Pennsylvania Human Relations Act ("PHRA")[3]; Count III, retaliation under Title VII; Count IV, retaliation under the PHRA.[4]  Although not asserted as a separate count, the plaintiff also avers that Defendant DOC "failed to properly train and supervise their administration and management in the proper handling of matters involving harassment, discrimination and a resultant hostile work environment."  (Doc. 1, Compl. ¶ 23).

The DOC moves for summary judgment, and in support of the motion raises three general issues.  It argues that plaintiff has failed to produce sufficient evidence to establish that the DOC is vicariously liable for any unlawful harassment; plaintiff has failed to exhaust her administrative remedies with regard to her failure to train claim; and plaintiff failed to exhaust her administrative remedies with regard to her retaliation claim.  Additionally, the DOC claims that even if plaintiff had exhausted her remedies with regard to her failure to train claim and retaliation claim, she has not produced evidence to support these claims.  We will discuss these issues in turn.

**1. National origin/ancestry and sex discrimination**

Generally, plaintiff's national origin/ancestry and sex discrimination claims involve allegations of a hostile work environment caused by a co-

---

[3] 43 PA. STAT. §§ 951 *et seq*.

[4] Under Pennsylvania law, PHRA is interpreted in accordance with its federal counterparts.  Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Therefore, our discussion of Plaintiff's Title VII claims will apply also to her PHRA claims.

worker, Gerald Kodack. Thus, this is not a case of inappropriate sexual advances or sexual touching at the workplace. Rather it is a case alleging hostile treatment by a co-worker, who is not a supervisor, that is tinged with gender and racial/ancestry animus due to words used by the co-worker.[5] The Third Circuit Court of Appeals has explained this area of the law as follows:

> Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is well established that a plaintiff can demonstrate a violation of Title VII by proving that sexual harassment created a hostile or abusive work environment. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).
> According to our precedent, to succeed in a sexual harassment claim based on a hostile work environment, the plaintiff must show five elements (1) the employee[ ] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999) (internal quotation marks and citations omitted)

---

[5] Plaintiff asserts that Kodack called her a b-tch about a dozen times; a Mexican b-tch once; an Hispanic c-nt approximately three times; a Puerto Rican c-nt several times and asked her if she would like "chewing gum" which is prison slang for penis. Plaintiff further avers that Kodack gestured at her obscenely. (Doc. 40, Pl's Counterstmt. of Mat. Facts ("Pl. SOF") at ¶¶ 117-124). It is not clear exactly how many of these comments the plaintiff herself heard. Her EEO complaint seems to indicate that, for the most part, plaintiff learned that Kodack used these offensive terms from third parties as opposed to Kodack saying them directly to her.

In the instant case, Defendant DOC challenges the fifth element, that is the existence of respondeat superior liability.

> Respondeat superior liability exists in connection with a hostile environment sexual harassment claim if either: (1) the tort is committed within the scope of employment (i.e., the harasser has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship.  See Bouton v. BMW of North America, Inc., 29 F.3d 103, 106 (3d Cir. 1994). Thus if the employer knew or should have known of the harassment and failed to take prompt remedial action, it is liable under Title VII.  Andrews [v. City of Philadelphia], 895 F.2d [1469, 1486 (3d Cir. 1990)].

Bonenberger v. Plymouth Tp., 132 F.3d 20, 26 (3d Cir. 1997).

Accordingly, the question presented here is whether the DOC took prompt remedial action when it knew or should have known of the alleged harassment of plaintiff by her co-worker.  The DOC asserts that the facts reveal that it did; plaintiff disagrees.   After a careful review, we find that the DOC did take prompt remedial action; therefore, judgment in its favor on this claim is appropriate.

The record reveals that on May 24, 2008, plaintiff spoke with Timothy Clark, intelligence gathering captain and the chief investigator of all incidents occurring at SCI-Frackville, regarding the harassment she had encountered. (Doc. 28, DOC SOF ¶ ¶ 18, 21).  He asked her if she wanted to put her complaint in writing.  She indicated that she did and Clark provided her EEO discrimination complaint forms to fill out and instructed her on the manner of completing them.  (Id. ¶ ¶ 22-23).  She filed her complaint of harassment on May 29, 2008.  (Doc. 29-19, Pls EEO Complt).  The DOC then took immediate steps to investigate and relieve

the situation. Corrections Officer Kodack, who plaintiff asserted harassed her, was immediately moved out of plaintiff's unit to a different unit. (Doc. 28 DOC SOF ¶ ¶ 25, 29).[6] Once Human Resources ("HR") Director Thomas Kowalsky received the complaint, he investigated and interviewed all of the people named in the complaint. (Id. ¶¶ 35-39). Kowalsky concluded that Kodack had acted inappropriately in slamming a clip board down in front of plaintiff and making an obscene gesture at her. (Id. ¶ 39). As a result, Kodack received a letter of reprimand. (Id. ¶ 40). Once Kowalsky completed the investigation, he forwarded his report to the Superintendent for review and then sent it to the Director for Equal Opportunity for the DOC. (Id. ¶ 47).

These actions taken by the DOC amount to prompt remedial action taken upon notice of the harassment, and plaintiff cannot establish respondeat superior liability on her hostile work environment claim. Summary judgment is therefore appropriate for the DOC on Counts I and II of the complaint.

Plaintiff's arguments seem to be that the DOC knew or should have known of the alleged harassment at an earlier date, that is, before plaintiff filed her formal written complaint. Plaintiff points to no convincing evidence to support this argument. She does, however, list several instances that she claims should have revealed to the DOC that she was being harassed in violation of Title VII.

---

[6]Plaintiff complains that even after she filed the complaint, Kodack tried to contact her in the parking lot of the prison. She indicates that she ignored him. (Pl. SOF ¶¶ 62, 124). Merely because Kodack was able to try and contact plaintiff one time in the parking lot does not render the remedial action taken by the DOC ineffective.

For example, plaintiff notes that prior to her formal written complaint she had complained to Sergeant Sackett, one of her supervisors, of an incident where Officer Kodack lost his temper, screamed, yelled and threw a clipboard at her, spilling her coffee.  She does not however indicate how this incident was tinged with racial or sexual animus as it must be for the application of Title VII.  See Burlington N. and Sante Fe Co. v. White, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth a general civility code for the American workplace").

She also indicates that she complained to Officer Ernesto Rivera.  However, her complaints to this officer are irrelevant as he was not in a supervisory position and, in fact, did not even work with plaintiff at SCI Frackville.

Plaintiff next indicates that several union officials knew of "rough times" she was having and a "tumultuous relationship" she had with Kodack.  Again, she alleges nothing to indicate that these people should have known that the rough times and tumultuous relationship were because of race or sex discrimination.

She also indicates that management complained about her hair color and fingernail length.  She points to nothing, however, to indicate that her hair color or fingernail length were in compliance with the regulations, that the regulations were discriminatory, or that the application of the regulations to her was discriminatory.

Without specifically examining the remainder of plaintiff's claims, suffice it to say that she has presented no convincing evidence that management should have known of her allegedly harassing work environment before she filed the formal complaint.  Further, she has cited

nothing to indicate that her employer prevented her from filing a formal complaint earlier than she did or that she filed any earlier formal complaints that were ignored.[7]  When plaintiff did finally file a formal complaint, the DOC engaged in an appropriate investigation and took action to protect plaintiff from her alleged harasser.

Plaintiff next argues that the DOC performed a substandard investigation into her claims.  Plaintiff, however, presents no evidence that the investigation procedure and policy of the DOC is inappropriate.  Generally, she complains that during the investigation she was interviewed telephonically while all the other witnesses were interviewed in person with a union representative if they so chose.  She does not, however, indicate the manner in which this adversely affected the investigation.  We find that a jury could not reasonably conclude based upon the evidence that has

---

[7] Plaintiff further states that she complained of an incident in the kitchen in August 5, 2007.  (Plaintiff's brief indicates that it was in August 2007, but the complaint is dated May 2007).  In this handwritten complaint, plaintiff asserts that the prison's kitchen supervisor, a Mr. Anthony, told her that she should not be laughing and joking with the inmates and that as a female in a male institution she should not be talking to the inmates.  He also indicated that he had been there a long time and that eighty percent (80%) of the female corrections officers had been dismissed.  (Doc. 40-18, Document dated May 5, 2007).  It appears that she provided this handwritten complaint to Sgt. Johnson and complained to Union Vice President Hoag.  Hoag informed her that she needed to obtain a form (a formal complaint form presumably) from Main Control and fill it out.  Plaintiff asserts that she did not have access to that portion of the prison and Hoag knew that.  Evidently, plaintiff pursued the complaint no further.  It was not until nearly a year later that she did file a written formal complaint and it does not address the treatment she received by Mr. Anthony.  Rather it addresses problems instigated by Corrections Officer Kodack.

9

been submitted that the DOC's investigation was performed inappropriately.

## 2. Failure to train claim

Plaintiff's complaint also asserts that the DOC did not properly train and supervise their administration and management in the correct handling of matters involving harassment, discrimination and hostile work environments. The DOC moves for judgment on this issue on the basis that plaintiff did not exhaust her administrative remedies. We agree.

The law provides that before filing a complaint under Title VII or the PHRA, a plaintiff must first raise the claim in an EEOC or PHRC complaint. A party must exhaust her administrative remedies before bringing suit under Title VII and the PHRA. Spence v. Straw, 54 F.3d 196, 200 (3d Cir. 1995); Burgh v. Borough Council of Montrose, 251 F.3d 465, 469-71 (3d Cir. 2001) (describing the exhaustion requirements under both statutes). Once an employee brings suit, "'the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Atkinson v. Lafayette Coll., 460 F.3d 447, 453 (3d Cir. 2006) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). The parties do not dispute that plaintiff filed an administrative claim and that the claim was exhausted. Instead, they dispute whether plaintiff's claim included sufficient allegations regarding whether the DOC properly trained and supervised. "The relevant test in determining whether [a party] was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Waiters

v. Parson, 729 F.2d 233, 237 (3d Cir. 1984).

In the instant case, the plaintiff's EEOC complaint contains no allegations with regard the failure to train claim. (See Doc. 29-19, Pl's EEOC Complt.) Plaintiff's EEOC complaint generally discusses the treatment she had received from her co-worker, Kodack. Moreover, plaintiff presents no cogent evidence that the training at the DOC was lacking. Absent such evidence, the training claim must be dismissed.

**3. Retaliation**

The final area addressed by the DOC is plaintiff's claim of retaliation. Section 704(a) of Title VII prohibits retaliation for opposing an unlawful employment practice or participating in an investigation of such a practice. 42 U.S.C. § 2000e–3. Plaintiff avers that she complained of allegedly unlawful harassment and discrimination. Defendant DOC then failed her on her firearms test as a pretext to justify terminating her. (Doc. 1, Compl. ¶¶ 55-57).

Plaintiff's claim is without merit. First, it is factually inaccurate. Plaintiff has presented no evidence that the DOC fired her for failing to qualify on her firearms. She was terminated, or considered resigned, when she did not return to work after a year of leave. Additionally, as set forth above, a plaintiff must exhaust administrative remedies before she properly may file a civil lawsuit. As with the failure to train claim, plaintiff's EEOC complaint does not allege retaliation.

**II. PSCA Motion for summary judgment**

The PSCA union filed a motion for summary judgment. It asserts that it cannot be held liable under the facts of this case. After a careful review, we agree. Two causes of action are asserted against the union

and we will address them *seriatim*.

   A.  Title VII claim

The first cause of action asserted against the union is a Title VII claim for discrimination. For a plaintiff to successfully assert a Title VII action against a union, the following requirements must be met:

> (1) the [union] committed a violation of the CBA with respect to the plaintiff; (2) ... the Union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) ... there was some indication that the Union's actions were motivated by some discriminatory animus." Yon v. SEPTA, Nos. 01-5231 & 01-5232, 2003 WL 22597614, at *16 (E.D. Pa. Nov.4, 2003) (citing Bugg v. Int'l Union of Allied Workers of Am., 674 F.2d 595, 598 n. 5 (7th Cir.1982) and Bell v. Glass, Molders, Pottery, Plastics, and Allied Workers Union Local No. 246, No. 00-1693, 2002 WL 32107218 (W.D.Pa. Aug.29, 2002)). "The deliberate choice not to process grievances" can, under certain circumstances, violate Title VII. Goodman v. Lukens Steel Co., 777 F.2d 113, 127 (3d Cir. 1985). To show a breach of the duty of fair representation, however, an employee must show more than that the union refused to represent the employee, "even if the [employee's] claim was meritorious." Findley v. Jones Motor Freight, 639 F.2d 953, 958 (3d Cir. 1981). Rather, "[p]roof of arbitrary or bad faith union conduct in deciding not to proceed with the grievance is necessary to establish lack of ... fair representation." Id. "To demonstrate bad faith, the plaintiff must show that the union had hostility toward plaintiff or the plaintiff's class and that the hostility negatively affected the union's representation of the plaintiff." Boyer v. Johnson Matthey, Inc., No. 02-cv-8382, 2005 WL 35893, at *9 (E.D.Pa. Jan.6, 2005) (citing Bell, 2002 WL 32107218, at *4).

Young v. Local 1201, Firemen & Oilers Union, No. 07-3576, 2009 WL 3152119, *4 (E.D. Pa. Sept. 25, 2009) aff'd 419 Fed. Appx. 235 (3d Cir. Mar. 15, 2011).

   Thus, plaintiff must establish that the DOC violated the collective bargaining agreement ("CBA"), the union allowed the breach to go

unrepaired and an indication exists that discriminatory animus motivated the union in failing to remedy the breach.

The defendant union first argues that no violation of the CBA occurred here because plaintiff quit her employment.  Additionally, the union asserts that even if it can be found that the union allowed a violation of her CBA rights go unremedied, there is no indication in the record that any lapse occurred due to discriminatory animus.  We agree.

Plaintiff alleges that she suffered a hostile work environment due to racial/ancestry and gender harassment.  As set forth above, plaintiff's employer investigated her written complaint when it was filed.  No cause existed for the union to get involved.  If the employer had not responded to plaintiff's complaint, then perhaps the union should have involved itself in the matter, but that is not the situation.

As set forth above, plaintiff also claims that her employer failed her on her fourth attempt to pass the firearms test in retaliation for her complaints.  The union worked with the employer to allow plaintiff to take the test for a fifth time. (Doc. 34, Def. Union Ex. D., William Hough Dep, at 5).  Although plaintiff ultimately did not take the test for the fifth time, the record reveals that the union did work to resolve the issue.  (Id.)  Plaintiff has no cause to argue that the union did not properly represent her.

Even if plaintiff had evidence that the union did not treat her properly, which she does not, she has no evidence that any such failure was based on racial/ancestry or gender discrimination.  Plaintiff argues that the union filed many grievances of corrections workers.  In fact they filed 115 grievances on the basis of harassment and discrimination between 2001 and 2010.   (Plaintiff's Counter SOF ¶ 99).  Plaintiff argues that these

included grievances filed on behalf of Hispanic men, but the union never filed one on her behalf, an Hispanic woman, therefore, discriminatory gender animus is demonstrated.[8]  Without more, these assertions do not evince discrimination.  To present such evidence to a jury would be to ask the jury to engage in speculation to infer discriminatory animus.  Such a result is inappropriate and the union's motion for summary judgment will be denied.

**Conclusion**

Plaintiff's employer is not liable to her for discrimination as it took appropriate remedial measures after she complained of harassment. Additionally, plaintiff failed to exhaust her failure to train and retaliation claims.  Even if she had exhausted them, she has presented no evidence which would support them.

With regard to the union, no evidence exists that the union failed to act on plaintiff's behalf.   Moreover, even if such evidence had been presented, plaintiff has presented no evidence of discriminatory animus on the part of the union.   Accordingly, the defendants' motions for summary judgment will be granted.  An appropriate order follows.

---

[8]Plaintiff also argues that summary judgment should seldom be granted in employment discrimination cases as most such cases are based upon inferences rather than direct evidence.  She cites to an Arkansas District Court case for this proposition.  <u>Coleman v. Holiday Inn Select</u>, 158 F. Supp. 2d 923, 928 (E.D. Ark. 2001).  We are unconvinced by this "general rule" and find that each employment discrimination case must be addressed on its own merits or lack thereof.  If a case lacks merit, it should not be presented to a jury.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOURDES ROMAN-MALAVE, | : | No. 3:10cv373 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| COMMONWEALTH OF PA, | : | |
| DEPARTMENT OF CORRECTIONS | : | |
| SCI FRACKVILLE, PA and | : | |
| PENNSYLVANIA STATE | : | |
| CORRECTIONAL OFFICER | : | |
| ASSOCIATION, | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **ORDER**

**AND NOW**, to wit, this 12th day of April 2012, it is hereby **ORDERED** as follows:

1) The Pennsylvania Department of Corrections' motion for summary judgment (Doc. 27) is hereby **GRANTED**;

2) The Pennsylvania State Correctional Officer Association's motion for summary judgment (Doc. 31) is hereby **GRANTED**; and

3) The Clerk of Court is directed to enter judgment in favor of the defendants and close this case.

                                               **BY THE COURT:**

                                               **s/ James M. Munley**
                                               **JUDGE JAMES M. MUNLEY**
                                               **United States District Court**